UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA
_Tallahassee_ DIVISION

## CIVIL RIGHTS COMPLAINT FORM
## TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983

_Bernard D. Wilson_,
Inmate # _T24935_
(Enter full name of Plaintiff)

vs.

CASE NO: _4:18cv310 RH CAS_
(To be assigned by Clerk)

_Off. Tyler Johnson, Maj. Larry Childs_,
_Sgt. James Revell, Warden Torey Johnson_,
_C.S.O. Mellissa Comerford_,
_Asst. Warden William Stephens_,
_Off. Flanagan, Nurse Lockhart, Pumphrey_.
(Enter name and title of each Defendant.
If additional space is required, use the
blank area below and directly to the right.)

## ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

## I. PLAINTIFF:

State your <u>full name</u>, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff: Bernard D. Wilson
Inmate Number: #134935
Prison or Jail: Suwannee Corr. Inst.
Mailing address: 5964 U.S. Highway 90
Live Oak, FL. 32060

## II. DEFENDANT(S):

State the <u>name</u> of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for <u>every</u> Defendant:

(1) Defendant's name: Torey Johnson
Official position: Warden
Employed at: Liberty C.I.
Mailing address: 11064 N.W. Dempsey Barron Rd., Bristol, FL. 32321

(2) Defendant's name: William Stephens
Official position: Asst. Warden
Employed at: Liberty C.I. -
Mailing address: 11064 N.W. Dempsey Barron Rd. Bristol FL. 32321

(3) Defendant's name: Melissa Comerford
Official position: Classification Supervisor
Employed at: Liberty C.I. -
Mailing address: 11064 N.W. Dempsey Barron Rd. Bristol FL. 32321

**ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS**

2

Defendant: Larry Childs
Position: Major
Employed at: Liberty C.I
Address: 11064 N.W. Dempsey Barron Rd.
Bristol FL. 32321

Defendant: James Revell
Position: Sgt.
Employed at: Liberty C.I.
Address: 11064 N.W. Dempsey Barron Rd.
Bristol FL. 32321

Defendant: Tyler Johnson
Position: Officer
Employed at: Liberty C.I
Address: 11064 N.W. Dempsey Barron Rd.
Bristol FL. 32321

Defendant: Flanagan
Position: Sgt.
Employed at: Liberty C.I
Address: 11064 N.W Dempsey Barron Rd.
Bristol FL. 32321

Defendant: Lockhart
Position: Nurse
Employed at: Liberty
Address: 11064 N.W. Dempsey Barron Rd.
Bristol FL. 32321

III. **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.

IV. **PREVIOUS LAWSUITS**

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A. Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?
Yes( )   No( ✓ )

1. Parties to previous action:
   (a) Plaintiff(s): N/A
   (b) Defendant(s): _____
2. Name of judge: _____   Case #: _____
3. County and judicial circuit: N/A
4. Approximate filing date: N/A
5. If not still pending, date of dismissal: _____
6. Reason for dismissal: N/A
7. Facts and claims of case: N/A

(Attach additional pages as necessary to list state court cases.)

B. Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?
Yes( ✓ )   No( )

1. Parties to previous action:
   a. Plaintiff(s): Bernard D. Wilson
   b. Defendant(s): Sgt. Timothy Dawson + Sgt. Palmer
2. District and judicial division: Northern District - Panama City Division
3. Name of judge: Jones   Case #: 5:12-cv.13-MAT-GRJ
4. Approximate filing date: 2012
5. If not still pending, date of dismissal: 2015
6. Reason for dismissal: Can't recall

3

7. Facts and claims of case: _Failure to protect._____

_____

**(Attach additional pages as necessary to list other federal court cases.)**

C. Have you initiated other actions (*besides those listed above in Questions (A) and (B)*) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

   Yes( )          No( ✓ )

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1. Parties to previous action:
   a. Plaintiff(s): _____
   b. Defendant(s): ____N/A_____
2. District and judicial division: __N/A__
3. Name of judge: __N/A__ Case #: ____
4. Approximate filing date: _____
5. If not still pending, date of dismissal: __N/A__
6. Reason for dismissal: __N/A__
7. Facts and claims of case: __N/A__

_____

**(Attach additional pages as necessary to list cases.)**

D. Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed:

   Yes( )          No( ✓ )

1. Parties to previous action:
   a. Plaintiff(s): _____
   b. Defendant(s): ____N/A_____
2. District and judicial division: __N/A__
3. Name of judge: __N/A__ Case Docket # __N/A__
4. Approximate filing date: __N/A__ Dismissal date: __N/A__
5. Reason for dismissal: __N/A__

4

6. Facts and claims of case: __N/A__

(Attach additional pages as necessary to list cases.)

## V. STATEMENT OF FACTS:

State briefly the FACTS of this case. Describe how <u>each</u> Defendant was involved and what each person did or did not do which gives rise to your claim. In describing what happened, state the names of persons involved, dates, and places. <u>Do not make any legal arguments or cite to any cases or statutes.</u> You must set forth separate factual allegations in separately numbered paragraphs. You may make copies of this page if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached. **(If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)**

~~1.) On September 22 2017, at approximately 9pm~~

1.) On 1-6-18 at Liberty C.I. Plaintiff was attacked and assaulted a second time by the same inmate after staff at L.C.I. was clearly aware of first severe attack on Plaintiff's life by I/M Cleus Sadrack and his gang affiliates. Which ~~resulted~~ stemmed from Sept. 22 2017 in B-1 dorm plaintiff was attacked and hit in the head with a "lock + sock" by Cleus Sadrack and stabbed multiple times by his "brothers". Once Plaintiff gained possession of one of his attackers' weapons he began to defend himself. The attack initiated in the restroom of B-1 and then spilled over into the bedding area...

5

area which was caught on video surveillance footage. Liberty C.I.'s A-team responders arrived, ~~the~~ and initiated chemical agents and apprehended all involved individuals. Plaintiff was escorted to medical where he recieved medical treatment for stab wounds + was housed in the medical infirmary until he recieved stitches the following day. Photos of his injuries were taken by staff.

2.) Plaintiff was then escorted to confinement where he was pending disciplinary action for his involvement.

3.) Per FL.D.O.C.'s procedures, Warden Tory Johnson was made aware of this violent incident but took no action to ensure plaintiff's safety from future harm from his attackers by placing a special review on plaintiff and involved parties. Had he done so then a keep seperate would have prevented plaintiff and his attackers from being housed together or placed in the same vicinity where a potentially serious threat could occur + minimize conflict. Warden Johnson's responsibility to review every disciplinary report and incident reports taken place at Liberty C.I ~~conflict~~ put him on fair notice that a potentially serious threat, long-term in nature, to plaintiff's safety existed.

4.) Plaintiff submitted a witness statement form ~~detailing the~~ requesting protective management and stating his fear from his attackers and their "brothers". In this said witness statement plaintiff explicitly detailed the occurring events and the roles played by each attacker; i.e., Cleus Sadrack, Sylvester Eleby, and inmate Towns. (See pg II-B for cont.)

~~VII. RELIEF REQUESTED: State briefly what you want the Court to do for you. Again, do not make any legal arguments or cite any cases of statutes.~~

~~Plaintiff seeks compensatory damages in the amount of fifty thousand~~

DC 225 (Rev 2/2012)                      6

5.) On Oct. 4, 2012, while housed in 4-dormitory Plaintiff attended I.C.T hearing to address his request for protection. This hearing was conducted by assistant Warden William Stephen, Major Larry Childs, and Classification Supervisor Melissa Comerford. Plaintiff, again, iterated to the team his reason for fear and the events that took place on Sept. 22, 2012. The I.C.T members's were obligated to ensure plaintiff's safety and to take precautionary measures to alleviate any future potential risk of harm from befalling the plaintiff at the hands of above-mentioned gang-members. All matters of events surrounding the Sept. 22 attack were to be evaluated when considering plaintiff's request for protection. The violence that ensued on the night of Sept. 22 2012 and plaintiff's detailed version of events placed the team members on fair notice that a potential risk of serious harm existed and thus it was their duties to alleviate such a threat. Had these individuals taken the initiative to issue a special review, which such purpose is designed to ensure that the inmates, who poses a potentially serious threat to one another, are tracked and housed to minimize potential conflict, then there stands a reasonable probability that plaintiff and his attackers would not have ~~encountered~~ been housed together and been kept seperate from one another.

6.) On Oct. 12 2012 plaintiff's request for protection was denied by State classification. Had they afforded plaintiff protection then there stands a reasonable probability that plaintiff and his attackers would not have been housed together and been kept seperate from one another. duties were ensure the safety of plaintiff's well-being and thus, by denying such protection this allowed for future potential harm to befall the plaintiff.

7.) Mr. Robert Buker, Senior Classification officer, failed to provide protection to plaintiff also or to take the initiative to see that a special review was in place to prevent any future potential risk of harm from befalling plaintiff at the hands of Sadrack, Eleby, or Towns.   (cont. on VI-C)

VI-B

8.) On January 6, 2018, at Liberty C.I.-main unit, while plaintiff was housed in I-dormitory confinement unit (I2-102) he attended confinement recreation which consists of 4 confinement cages. Plaintiff was in the last cage alone when officer

9.) Tyler Johnson escorted inmate Sadrack out the side-exit-door of I-dorm and lead him to Plaintiff's cage. Plaintiff immediately informed Johnson that Sadrack could not be placed in plaintiff's cage. Off. Johnson was previously made aware of the conflict between Sadrack and Plaintiff when he attempted to house them in the same cage prior. When Plaintiff told Johnson not to place Sadrack inside his cage Johnson stated, "Stop being a bitch Wilson! Let's see how tough you are now!" Johnson proceeded to place Sadrack inside the cage. Once Sadrack's cuffs were removed and Johnson proceeded to walk off Sadrack attacked Plaintiff by striking him with a closed fist in the side of his head causing Plaintiff to fall backwards striking the back of his head on the concrete. Plaintiff got up and attempted to defend himself, he was hit with a few more punches before he and Sadrack began to wrestle. Security Post-2 (the guardtower) obviously witnessed this and called it in on the radio which caused Sgt. Jimmy Lee Revell and officer Shuler to come out and order Plaintiff and Sadrack to cease. To which they both complied and submitted to hand restraints.

10.) Plaintiff was placed in I-1 dormitory shower cell 4 and later, on video surveillance, escorted to the medical evaluation room located in I dorm's sally port. Once inside, upon evaluation, Plaintiff informed nurse Lockhart of his injuries, which included pain in his head, back, right thumb, left knee and testicles. To this Lockhart stated "Take some Ibuprofen, you shouldn't have been fighting!" no further medical assessment or treatment was provided.

11.) Sgt. Revell was assigned as I-dormitory supervisor and his duties required that he oversee all functions and activitys of the I dorm confinement unit on this 6 day of January 2018.

VI-C

Sgt. Revell's requirement was to supervise all other officers who were assigned to the confinement unit and their actions involving inmates housed in I-dormitory. Sgt. Revell allowed off. Johnson to remove Sadrack from his cell alone without the presence of him or another officer as required by D.O.C's F.A.C. Had Sgt. Revell been present when escorting Sadrack to recreation then he would have not allowed Sadrack to be placed in Plaintiff's cage to cause harm. Sgt. Revell's obligation, as conf. supervisor, is to be familiar with confinement inmates' reasons for confinement. Plaintiff and Sadrack both recieved disciplinary reports for fighting one another and was sentence to serve confinement time. Sgt. Revell was well aware of this fact and is knowledgable that inmates who are in confinement for fighting one another shall not be housed together or placed in the same confinement cage. Revell's lack of responsibility caused Sadrack to be placed in Plaintiff's rec. cage and which resulted in Plaintiff's being physically assaulted again by the same inmate who severely wounded him before. Revell's familiorality with the rules and procedure (FL. Dept. of corr. S.O.P.) of confinement placed him on fair notice that Sadrack posed a threat to Plaintiff and Johnson's removing and escorting of an inmate alone, without the aid of another official, was unlawful. Sgt. Revell's neglect results in careless disregard of the safety and care of the inmates in his custody in as much that such behavior was so obvious that any reasonable person in his position would have known. Had Sgt. Revell acted accordingly then there stands a reasonable probability that Sadrack would not have been placed in the same rec. cage as Plaintiff thus, preventing any harm from befalling him.

12.) Officer Johnson's deliberate indifference to plaintiff's safety resulted in Plaintiff's being physically attacked and harmed. Johnson had knowledge of the conflict between Sadrack and Plaintiff not only because Plaintiff informed him but also because off. Johnson had been assigned to conf. I-doom for (cont. pg VI-E)

VI-D

months prior to this incident and thus, his duty as a officer assigned to I-dorm confinement requires him to become familiar with the inmates' reasons for being housed in confinement. Johnson was well aware of the fact that Sadrack and Plaintiff was in confinement for fighting one another and that such inmates shall not be housed together nor placed in the same rec. cage. Off. Johnson is clearly aware that he shall not, at anytime, remove any inmate from a cell without the assistance of another official. had Johnson adhered to proper protocol and procedure, by one; getting assistance before removing Sadrack from his cell and escorting him to rec. cage and two; by not placing Sadrack in Plaintiff's ~~rec cag~~ rec. cage then ~~there's a~~ Plaintiff would not have been ~~attack and~~ attacked and no harm would have befallen him. Johnson's careless and reckless disregard for Plaintiff's safety lead to plaintiff's being attacked and physically assaulted at the hands of another inmate. Any reasonable person in his position would have known that such a serious risk of potential harm was imminent and obvious.

~~Nurse Lockhart's failure~~

13.) Plaintiff suffered a serious head and back injury that was not properly examined nor treated by the medical staff at Liberty C.I. Due to his back injury, which derived from him falling backwards, and by not being able to brace himself for the fall, he cannot sit down for a long period of time without his lower back causing him serious pain. He suffered a mild concussion from hitting his head on the concrete and getting punched in his head by Sadrack. His right thumb was swollen for weeks and still aches at times. His testicles were sore from where Sadrack kneed him several times. and his left knee caused pain from where his knee hit the steel pole. Plaintiff filed a number of sick calls complaining of these untreated injuries which went untreated and lead to Plaintiff's having ---

VI-E

to file a number of informal and formal grievances to seek and recieve proper medical treatment. His family also had to get involved in order to get properly examined.

14.) Nurse Lockhart's failure to properly assess and provide treatment to plaintiff's injuries resulted in long-term suffering of back, head and hand & knee pain. On Jan. 6, 2018, after entering the medical observation room to be assessed for his injuries Plaintiff informed nurse Lockhart of his injuries. However, Nurse Lockhart had failed to follow procedure by not having Plaintiff's medical chart, nor a diagram, present to properly document his injuries. Nor did she put in a referral for him to be further examined by the medical doctor/physician so that such injuries to be properly treated. Such deliberate indifference and neglect resulted in the violation of Plaintiff's eigth amendment right to be free from cruel and unusual punishment. On 1-8-18, grievant submitted a sick call detailing his pain and injuries that he was suffering and seeking treatment for that resorted from the attack, however, the "sick-call" nurse only conducted an interview at Plaintiff's cell door but no examination was conducted (supported by video surviellance of I-2 dormitory). On 1-9-18 Plaintiff submitted another sick call and again he was only interviewed by Nurse Revell at his cell door and no examination was conducted! On 1-12-18 Plaintiff submitted another sick call and again only an interview at his cell door was conducted. Not once had he been properly examined. On 1-10-18 a informal grievance was filed concerning this sick call issue and plaintiff's pain being ignored. On 1-16-18, medical staff responded to Plaintiff's informal grievance but thier reasons for denial were due to oversight of Plaintiff's amount of sick calls up til the date of their response (1-16-18) Plaintiff had filed the required amount of sick calls and plus several more! But still he had not been examined by medical. On 1-22-18 Plaintiff submitted a formal grievance to central office hoping to get proper treatment.

15.) The medical staff's chosing to disregard/neglect plaintiff's injuries resulted in the suffering of long-term significant pain in the head and back. Plaintiff cannot sit down long without suffering nor can he stand erect with his back straight without suffering. This is due to medical's neglect. Thus, medical staff's Ginna T. Harris as being the person to respond to Plaintiff's informal grievance shall be held responsible for such neglect because had she instructed her staff to properly assess plaintiff's injuries then there stands a reasonable probability that Plaintiff would not be suffering long-term significant injuries.

16.) On 1-8-18 Plaintiff submitted a grievance of sensitive nature to the grievance lock box arguing the wrongful acts, and the attack that was caused by those acts, that occurred on 1-6-18. Plaintiff since then has been trying to obtain full names of particular staff members whom he felt were responsible for his suffering and on 1-16-18 he was retaliated upon and threatened by Sgt. Crowe and Sgt. Flanagan whom came to Plaintiff's cell door (I1-201) and Flanagan stated, "if you plan on suing my officers then you better think again!" Plaintiff was also threatened with gas! Sgt Flanagan had plaintiff handcuffed and placed in the shower cell in I-1 while he went into Plaintiff's cell and destroyed his personal property including his first 42 U.S.C 1983 complaint that he had been preparing. Plaintiff had some blue gym shorts that Flanagan torn to pieces also. Plaintiff submitted a number of grievances concerning this issue. These threats of harm and retaliatory acts displayed by staff places great fear in the mind of Plaintiff.

17.) Due to the negligence and reckless disregard for plaintiff's safety and well-being by the above-mentioned defendants Plaintiff has long-term suffering of intense back pain and head pain. He also lives in fear and paranoia, PTSD, lack of sleep, stress and anxiety and extreme mental unstability.

VI-6

18.) All parties (Defendants) are to be sued, by plaintiff, in their individual and official capacities.

19.) Nurse Lockhart and Ginna Harris medical staff and supervisor's' deliberate indifference to plaintiff's serious medical needs deprived him of his rights under the (14) fourteenth amendment.

20.) Warden Torry Johnson's being the warden and overseer of Liberty C.I. was on fair notice that his lack of conduct, to ensure plaintiff's safety from harm at the hands of other inmates, were unlawful. Johnson (warden) is aware of all major incidents involving acts of violence, which occur at Liberty C.I.. T. Johnson knew of plaintiff's being violently attacked by 3 gang members Sadrack, Towns and Eleby on Sept. 22, 2012 in B-1 dorm. T. Johnson was made aware of plaintiff's request for protective management and his fear of above-mentioned gang members but refused to issue protection which would have placed plaintiff under protective management nor did he place a keep separate against plaintiff and his attackers preventing any future potential threats of serious conflict. T. Johnson's deliberate indifference resulted in plaintiff to suffer significant injuries at the hands of other inmates. Thus, violating plaintiff's 8th Amendment const. rights.

21.) Sgt. James Revell's being confinement supervisor entitled him to be familiar with all inmate's reasons for placement in I dorm confinement. Sgt. Revell's being aware of Plaintiff's being confined for fighting with inmate Sadrack clearly placed him on fair notice that they could not be housed together. Also, his knowledge of the D.O.C. S.O.P. (Standard Operation Procedure) he was well informed that 2 officers must/shall be present any time an inmate's cell door is opened. His allowing, or lack thereof, officer Johnson to remove Sadrack from his cell, alone, and escort him to rec. cage where he was placed in plaintiff's cage. Revell's failure to properly operate and supervise confinement in I-dormitory lead to plaintiff's being

VI-H

violently assaulted at the hands of another inmate and his suffering of significant injury. Which clearly violates plaintiff's 8th amendment rights.

22.) CSO Melissa Comerford's being a Classification Supervisor at Liberty C.I. was responsible for authorizing the status (updating) and housing of inmates at L.C.I. Thus, Comerford's being aware of the violent attack on Plaintiff on Sept. 22, 2017 and his request for protection, which detailed his reasons for fear, should have caused her to place a keep seperate or special review status on Plaintiff and his attackers to alleviate any future potential threats of serious conflict. Her deliberate indifference to the substantial risk of serious harm lead to plaintiff's being attacked a second time by the same inmate and violated his 8th amendment rights, and caused him to suffer significant injuries.

23.) Asst. Warden Stephen's duty as serving as I.C.T chair-person on 10-4-17, clearly placed him on notice that plaintiff was violently assaulted by gang members and that Plaintiff requested protective management and detailed his reasons for fear of specific members. Asst. Warden Stephens had the authority to place plaintiff under protective mngmnt. and or place a special review status on plaintiff and his attackers to prevent further potential threats of serious harm from befalling him. However, Stephen's acts of deliberate indifference to the serious harm lead to plaintiff's second attack by same inmate and resulted in his suffering of significant injuries thus, violating his 8th amendment rights.

24.) Major Child's duty as security official and his serving as chair person, on 10-4-17, of I.C.T clearly placed him on fair notice that an imminent threat of substantial ~~harm~~ risk of serious ~~harm~~ harm was an issue to Plaintiff. Due to Plaintiff's request for protection and his detailed reasons for such fear informed Childs that action should have been taken to alleviate such a threat. Child's deliberate indifference to a substantial risk of serious harm resulted in Plaintiff's being violently attacked

VI-I

a second time by same inmate who assaulted him previously and Plaintiff's suffering significant injuries. Clearly this violates his 8th Amendment rights.

25.) Officer Johnson's being assigned as confinement, I-dorm, staff required him to be familiar with D.O.C's S.O.P and inmates' status and reasons for confinement whom are housed in I-2 dormitory where Johnson was overseen. Johnson's deliberate indifference to a substantial risk of serious harm lead to Plaintiff's being attacked by Sadrack again and resulting in him suffering significant injury. Johnson was clearly on notice that his conduct was unlawful by his: ignoring of procedure which required that (2) two officers be physical present any time an inmate's cell door is opened and inmate is moved, his ignoring the fact that Plaintiff and Sadrack were in confinement for fighting one another and thus could not be housed together nor placed in the same rec. cage, and his ignoring Plaintiff's warnings that Sadrack could not be placed in the same cage with him, thus leading to attack.

26.) Nurse Lockhart's being a nurse employed at Liberty C.I. on 1-6-18 placed her on fair notice that her conduct was unlawful due to the obvious procedure and protocols required by ~~~~ Corizon which requires all medical staff, when responding to inmates fighting, to document all injuries on a diagram chart and place in inmate's medical chart. Lockhart's failing to do so lead to Plaintiff's long-term suffering of significant pain from his injuries in his back, head, hand. Her deliberate indifference violated Plaintiff's 8th and 14th amendment rights.

27.) Sgt. Flanagan's RETALIATORY acts directed at plaintiff for his EXERCISING his rights to the redress of the grievance procedure and his choosing to pursue legal matters has installed fear, PARANOIA and other mentally-psychological traumas that derives from the potential risk of future backlash and vengeful acts administered by other FL. Dept. of

VI-J

corr. officials mainly in the North Florida Region where violence (Chang) is exceptionally high.

28) Plaintiff reiterates, in order to clearly substantiate the fact that after the attack on his well being on Sept. 22, 2017, that his request for protection, dictated on a witness statement form, detailed the fact that all (3) three attackers were members of the gang (ZMF) Zoes and that he was in fear of ALL members of this gang. This was also verbally told to the ~~I.C.T~~ I.C.T. on 10.4.17. Furthermore, Plaintiff recieved a C.M. recommendation from Liberty's administration which partially states, "Additional intelligence was gathered regarding this incident (Sept. 22, 2017) and revealed that..... inmate Eleby (ZMF) zoe gang member (Head) ordered a "Hit" on inmate Wilson (Plaintiff)." Once such information was made known to administration and defendants, especially after learning of the brutal violence of the Sept. 22 event, they were well aware of the dangers that plaintiff faced from Sadrack and other members of this gang and possibly other inmates regarding this "HIT"!! Protection should have been ~~afforded~~ provided. Thus, holding all defendant responsible for the second assault on plaintiff's well-being. Once defendants learned of the "Hit" being placed on Plaintiff then measures should have been taken to alleviate future potential threats of serious harm/conflict from befalling plaintiff. The administration's own admittance of being aware of such a "Hit" and refusing to provide any safety/protection, coupled with plaintiff's version of events and his requests for protection, clearly placed them on fair notice that plaintiff faced future threats of potentially serious harm/conflict from this ZMF gang & its members.

VI-K

## VI. STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V. **If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.**

1. Plaintiff's 8th amend. right, guaranteed under the U.S. constitution, to be free from cruel & unusual punishment was violated by the defendants who acted under the color of state law, due to their deliberate indifference to plaintiff's safety to be free from violence at the hands of other inmates when they allowed plaintiff to be attacked by Ckus Sadrack on 1-6-18.

2. Sgt. Flanagan's acting under color of state law, violated defendant's 1st amend rights by his retaliatory acts directed at plaintiff for his utilizing of the grievance procedure. All defendants violated plaintiff's 14th amend. constitutional rights. And Sgt. Flanagan's at fault for his retaliatory acts displayed against plaintiff for his exercising his right to the redress of the grievance process.

## VII. RELIEF REQUESTED:

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/ statutes.

Plaintiff seeks monetary rewards in a total of $50,000.00 (fifty thousand dollars) for permanent punitive and compensatory damages, nominal damages (the requisite amount for such), injunctive relief barring housing in the Northern Region's 1 and 2 of FL.D.O.C. due to fear of retaliatory acts. Nominal damages in the amount of 1 dollar per defendant and the reimbursement of all court & attorney fees, of $10,000, and a jury trial.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.

5-30-18
(Date)

_____
(Signature of Plaintiff)

**IF MAILED BY PRISONER:**

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one): ☐ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on: the 28 day of June, 20 18.

_____
(Signature of Plaintiff)

Revised 03/07

7

Bernard [...]
Suwannee C.I.
5964 US Hwy 90
Live Oak, FL 32060

Mailed From State
Correctional
Institution
Suwanee C.I.



Northern District of Florida
Clerk of Court
111 N. Adams St.
Tallahassee, FL 32301-7730

CHECKED JUL -2 2018

LEGAL MAIL

Notary